IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | Civil No. 19-00544 DKW-KJM |
| | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO GRANT |
| Plaintiff, | ) | PLAINTIFF'S MOTION FOR FINAL |
| | ) | JUDGMENT BY DEFAULT, |
| vs. | ) | PERMANENT INJUNCTION, CIVIL |
| | ) | MONETARY PENALTIES, AND |
| PETER SZATMARI, | ) | OTHER STATUTORY AND |
| | ) | EQUITABLE RELIEF |
| Defendant. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION
TO GRANT PLAINTIFF'S MOTION FOR FINAL JUDGMENT BY
DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY
PENALTIES, AND OTHER STATUTORY AND EQUITABLE RELIEF

On May 22, 2020, Plaintiff United States Community Futures Trading Commission ("Plaintiff" or the "Commission") filed a Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Motion"). ECF No. 26. Defendant Peter Szatmari ("Defendant") was served with a copy of the Motion, but did not file an opposition. ECF No. 27 at 33-34.

On May 26, 2020, the Court found this matter suitable for disposition without a hearing pursuant to Local Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii. ECF No. 28. Based on

the following, and after carefully considering the Motion, the supporting memorandum, declaration, and exhibits attached thereto, and the record established in this action, the Court FINDS AND RECOMMENDS that the district court GRANT the Motion.

BACKGROUND

On October 7, 2019, Plaintiff filed the Complaint against Defendant.  *See* ECF No. 1.  The Complaint states that Plaintiff is an independent federal regulatory agency that is charged by Congress with responsibility for administering and enforcing the provision of the Commodity Exchange Act (the "Act"), specifically, 7 U.S.C. §§ 1-26 and the Regulations, 17 C.F.R. Pt. 1-190.  *See id*. at 4 ¶ 9.  Defendant was a resident of Hawaii during the relevant violation period. *See id* at ¶ 10.

The Complaint alleges that in the time period as early as 2014 to December 2016, Defendant and his business partner, David Sechovicz,[1] ("Partner") "created and disseminated millions of fraudulent solicitations to convince recipients to open and fund binary options trading accounts on websites operated by unregistered, off-exchange brokers."  *Id*. at 1 ¶ 1.  The Complaint alleges that by this conduct

_____

[1] David Sechovicz entered into a settlement agreement with Plaintiff regarding the same claims and violations in this case.  ECF No. 27-1 at 15-27.

2

Defendant violated the Act, 7 U.S.C. §§ 1-26 (2012) and 17 C.F.R. Pt. 1-190 (2019).  *See id*. at 2 ¶ 4.

On December 4, 2019, the Court granted an Ex Parte Application for Order to Serve Defendant by Publication.  *See* ECF No. 12.  On January 15, 2020, Plaintiff filed a Motion for Entry of Default and an Affidavit of Publication.  *See* ECF No. 13,15.  On January 22, 2020, the Court issued an Entering Order Denying Without Prejudice the Motion for Entry of Default and allowed for the re-publishing of the summons for Defendant.  *See* ECF No. 17.  Plaintiff filed an Affidavit of Publication pursuant to the January 22, 2020 Entering Order on February 24, 2020.  *See* ECF No. 19.

Thereafter, on March 12, 2020 Plaintiff filed a renewed Motion for Entry of Default.  *See* ECF No. 20.  On March 18, 2020, the Court issued an Entering Order requiring Plaintiff to file a Supplemental Declaration addressing whether the Defendant had responded to the Complaint as of March 13, 2020.[2]  *See* ECF No. 21.  Plaintiff filed the Supplemental Declaration on March 18, 2020.  *See* ECF No. 22.  After Defendant failed to appear or otherwise respond to the Complaint, the Clerk of the Court entered default against Defendant on March 19, 2020.  *See* ECF No. 23.  Plaintiff filed the instant Motion on May 22, 2020.

---

[2] Plaintiff filed its renewed Motion for Entry of Default a day before the expiration of the deadline for Defendant to respond to the Complaint.  *See* ECF No. 21.

DISCUSSION

I.    Legal Standard

Default judgment may be entered for the plaintiff if the defendant has

defaulted by failing to appear or otherwise defend against the plaintiff's complaint

and the plaintiff's claim is for a "sum certain or for a sum which can by

computation be made certain[.]" Fed. R. Civ. P. 55(a), (b).  The granting or denial

of a motion for default judgment is within the discretion of the court.  *Haw.*

*Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511-12 (9th Cir. 1986).  Entry of

default does not entitle the non-defaulting party to a default judgment as a matter

of right.  *In re Villegas*, 132 B.R. 742, 746 (B.A.P. 9th Cir. 1991).  Default

judgments are ordinarily disfavored, and cases should be decided on their merits if

reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  Courts

may consider the following factors in deciding whether to grant a motion for

default judgment (collectively, "*Eitel* factors"):

> (1) The possibility of prejudice to the plaintiff, (2) the merits of the
> plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
> the sum of money at stake in the action[,] (5) the possibility of a
> dispute concerning material facts[,] (6) whether the default was due to
> excusable neglect, and (7) the strong policy underlying the Federal
> Rules of Procedure favoring decisions on the merits.

*Id*. at 1471-72 (citation omitted).

On default, "the factual allegations of the complaint, except those relating to

the amounts of damages, will be taken as true."  *TeleVideo Sys., v. Heidenthal*, 826

4

F.2d 915, 17 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the pleadings, and the claims which are legally insufficient are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

II.   Jurisdiction

Before considering the merits of the Motion, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendant.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

The Court finds that it has subject matter jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2012), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any

rule, regulation, or order thereunder.  Also, venue is proper pursuant to Section

6c(e) of the Act, 7 U.S.C. § 13a-1(e) because Defendant transacted business in this

district.  Additionally, transactions and acts in violation of the Act occurred in this

district.

The Court also finds that personal jurisdiction exists over Defendant based

on Plaintiff's allegation that Defendant was a resident of the State of Hawaii during

the period of the alleged violations.  *See* ECF No. 27-1 at 4.  Accordingly, the

Court turns to the merits of the Motion.

III.   Application of the *Eitel* Factors

Following a determination that jurisdiction is proper, the Court must

consider whether default judgment is appropriate under the *Eitel* factors.

A.   Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether Plaintiff would suffer prejudice if

default judgment is not entered.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp.

2d 1172, 1177 (C.D. Cal. 2002).  In this case, absent entry of default judgment,

Plaintiff would be without another recourse for recovery against Defendant.

Accordingly, the first *Eitel* factor favors the entry of default judgment.

B.   Merits of Plaintiff's Substantive Claims and Sufficiency of the
Complaint

Under the second *Eitel* factor, the Court considers the merits of Plaintiff's

substantive claims.  The allegations in the complaint are taken as true for purposes

of determining liability.  *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18; *Fair Hous.*

*of Marin*, 285 F.3d at 906.  Taking Plaintiff's allegations in the Complaint as true,

the Court finds that Plaintiff has established that it is entitled to default judgment

against Defendant.

The Complaint alleges that between 2014 and December 2016, Defendant

and Partner fraudulently solicited consumers into opening and funding binary

option accounts on websites operated by unregistered, off-exchange brokers.  ECF

No. 1 at 1, ECF No. 27-1 at 5-11.  The fake and misleading solicitations were

through emails, websites, professional videos, advertisements and social media.

ECF No. 27-1 at 5-11.  These solicitations convinced consumers to open binary

trading accounts and/or use automated trading software in their accounts to trade

binary options.  *Id*.  The solicitations promised significant profits by using the

trading software.  ECF No. 1 at 1-2, ECF No. 27-1 at 5-11.  The false solicitations

came in various forms.  Some solicitations used fake testimony of actors claiming

to be making a profit from the use of the software, while others showed fake bank

and trading accounts with supposed profits from trading binary options.  ECF No.

27-1 at 5-11.

The Complaint also alleges that Defendant and Partner knew that the

solicitations were false and misleading, that the software did not work as claimed,

and that consumers who opened and funded binary accounts with the unregistered

7

brokers were unlikely to make a profit.  ECF No. 1 at 1-2 ¶¶ 1, 3.  From this

conduct, Defendant and Partner received approximately $3.8 million from flat fees

paid to them for each new account that was opened and funded.  ECF No. 1 at 2 ¶

2.

In its Complaint, Plaintiff asserts five counts against Defendant for various

violations of the Act and the Code of Federal Regulations Title 17.  The Complaint

asserts the following claims:  Count I: violations of Sections 4c(b) of the Act, 7

U.S.C. § 6c(b) (2012) and regulation 32.4, 17 C.F.R. § 32.4 (2019); Count II:

violations of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012); Count III:

violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and Regulation

180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2019); Count IV: violation of

Regulation 4.41(a)(1)-(2), 17 C.F.R. § 4.41(a)(1)(2) (2019); Count V: violations of

Regulation 4.41(a)(3) and (b)(1)-(2), 17 C.F.R. § 4.41(a)(3), (b)(1)-(2) (2019).

ECF No. 1 at 9-16.

1.      Count I

Count I alleges fraud by misrepresentation and omission, specifically

that Defendant committed fraud in violation of § 4c of the Act, 7 U.S.C. § 6c (b)

(2012).  This section states:

> No person shall offer to enter into, enter into or confirm the execution
> of, any transaction involving commodity regulated under this chapter
> which is of the character of, or is commonly known to the trade as, an
> "option", "privilege", "indemnity", "bid", "offer", "put", "call",

> "advance guaranty", or "decline guaranty", contrary to any rule, regulation, or order of the Commission prohibiting any such transaction under such terms and conditions as the Commission shall prescribe.

7 U.S.C § 6c(b) (2012).

> Additionally, 17 C.F.R. § 32.4 provides:

> In or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction, it shall be unlawful for any person directly or indirectly: (a) [t]o cheat or defraud or attempt to cheat or defraud any other person; (b) [t]o make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof; or (c) [t]o deceive or attempt to deceive any other person by any means whatsoever.

17 C.F.R. § 32.4 (2012).

To establish liability under these sections, Plaintiff must show that Defendant made material misrepresentations or omissions with scienter. *Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328-29 (11th Cir. 2002). "Scienter is established by showing that Defendants committed the violations intentionally or 'that the representations were made with a reckless disregard for their truth or falsity." *U.S. Commodity Futures Trading Commission v. Capitol Equity FX, LLC.*, CV 17-743 JGB, 2017 WL 9565340 (C.D. Cal. 1987).

By the conduct described in the Complaint, Defendant made material misrepresentations or omissions in his marketing solicitations that induced

consumers to open and fund binary option trading accounts.  In these marketing solicitations, Defendant:  (1) misrepresented that trading binary options would generate guaranteed profits while minimizing or disclaiming any risks; (2) claimed trading software was tested and produced profits when software had not been tested; (3) used actors or fake personalities as real owners of the trading software; and (4) depicted fictious trading results as real.  ECF No. 1 at 1 ¶ 1, 27-1 at 5-11.

These misrepresentations and omissions were material because Defendant's consumers would have considered this information important in making a decision to invest.  *U.S. Commodity Futures Trading Comm'n vs. WeCorp., Inc.*, Civ. No. 09-153 PMP, 2009 WL 10677037 (D. Haw. Sept. 11, 2009).  Defendant acted with scienter because he knew that the misrepresentations were false.  Defendant knew that the binary options did not guarantee a profit as he stated, that the software he touted had not been tested or did not work and that actors were portraying users of the software system.  Accordingly, Plaintiff has sufficiently stated a claim for violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012) and regulation 32.4, 17 C.F.R. § 32.4 (2019).

2.      Counts II and IV

Counts II and IV allege fraud by a Commodity Trading Advisor ("CTA"), specifically violations of 7 U.S.C § 6o(1) (2018) which makes it unlawful for a CTA to:

> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6o(1) (2012).

Plaintiff has made a showing that Defendant was a CTA during the relevant period. A CTA is any person who for compensation or profit "engages in the business of advising others, either directly or through publication, writings, or electronic media . . ." *Id*. § 1a(12) (2019). As stated above, Defendant allegedly used his marketing solicitations to entice consumers to open and fund binary options trading accounts. ECF No. 1 at 11 ¶ 11. Further, Defendant received a fee for each participant who opened and funded an account. *Id*. at 12 ¶ 42; ECF No. 27-1 at 11-13. Defendant's fraudulent solicitations were disseminated by e-mail, thus using an instrument of interstate commerce. ECF No. 27-1 at 10-11. Accordingly, Plaintiff has stated a claim for the violation of Section 4o of the Act and of Regulation 4.41.

### 3.    Count III

Count III alleges misrepresentation and omission of material facts in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1. These sections provide that:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in

> interstate commerce . . . to intentionally or recklessly: (1) use or
> employ, or attempt to use or employ, any manipulative device,
> scheme or artifice to defraud.

17 C.F.R. § 180.1.

By the conduct described in the Complaint, Defendant has violated these sections.  Defendant intentionally committed fraud in connection with his binary options which qualify as a "swap" under Section 1a(47)(A), 7 U.S.C. § 1a(47)(A). *See Commodity Futures Trading Comm'n v. Vault Options, Ltd.*, Civ. No. 16-01881, 2016 WL 5339716 at *6 (N.D. Ill. July 20, 2016) (stating that binary options are swaps).  Defendant intentionally created and sent out fraudulent solicitations to convince consumers to open and fund binary trading accounts and use trading software that Defendant claimed would result in significant profit while minimizing or disclaiming the risks involved.  ECF No. 1 at 13 ¶ 48.  Defendant also misrepresented the risks involved in binary trading, the potential profits from binary trading, and the trading software's effectiveness.  *Id*. at 7 ¶ 23.

Accordingly, Plaintiff has shown Defendant violated Section 6c(1) and Regulation 180.1.

C.      The Sufficiency of the Complaint

For the reasons discussed above, the Court finds that the allegations in the Complaint are sufficiently pled.  Accordingly, the sufficiency of the Complaint weighs in favor of default judgment.

D.     The Sum of Money at Stake

Regarding the fourth *Eitel* factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176 (citing *Eitel*, 782 F.2d at 1472).  In this case, in addition to injunctive relief, Plaintiff seeks a significant amount of damages, i.e., $5,699,508.00 as a civil monetary penalty.  However, Plaintiff's damages request is tailored to the amount of specific misappropriated gains by Defendant.  Under the circumstances, the Court concludes that this favors the entry of default judgment.

E.     Possibility of Dispute Concerning Material Facts

The fifth factor, the possibility of dispute concerning material factors, weighs in favor of default judgment.  As noted above, the Court takes the well-pled allegations of the Complaint as true, except those relating to the amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  Despite being given a fair opportunity to defend against Plaintiff's claims, Defendant has failed to do so.  Although Plaintiff served Defendant by publication, Defendant has failed to make an appearance in this action or otherwise respond to Plaintiff's claims.  ECF. No. 13-22.  Because no dispute has been raised regarding Plaintiff's material factual allegations, this factor favors default judgment.

F.     Whether Default was Due to Excusable Neglect

13

Regarding the sixth factor, the Court finds that Defendant's default was not the result of excusable neglect.  Plaintiff served Defendant by publication on January 27, February 3, February 10, and March 17, 2020, and proof of service was filed with the Court on February 24, 2020.  ECF No. 19.  Defendant failed to defend this action, and the Clerk of Court entered default against him on March 19, 2020.  ECF No. 23.  The record indicates that Defendant's default was not the result of excusable neglect, but rather due to Defendant's conscious and willful decision not to defend this action.  Consequently, this factor favors the entry of default judgment.

G.      Policy Favoring Decisions on the Merits

The Court turns to the seventh and final *Eitel* factor.  Defendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible.  Under Federal Rule of Civil Procedure 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive.").  Here, Defendant has failed to defend this action, and has thus rendered adjudication on the merits before this Court impracticable.  Although the policy favoring decisions on the merits generally weighs against default judgment,

14

this factor alone does not preclude this Court from entering default judgment against Defendant.  Accordingly, this factor does not weigh against default judgment.

 H.   Totality of the *Eitel* Factors

 Upon consideration of the foregoing *Eitel* factors, the Court finds that the totality of the factors weighs in favor of entering default judgment in favor of Plaintiff against Defendant as to the following counts:  Count I: violations of Sections 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012) and regulation 32.4, 17 C.F.R. § 32.4 (2019); Count II: violations of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012); Count III: violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2019); and Count IV: violation of Regulation 4.41(a)(1)-(2), 17 C.F.R. § 4.41(a)(1)(2) (2019).[3]

IV.  Remedies

 Although Defendant's default establishes his liability to Plaintiff, it does not establish the amount of damages or other relief to which Plaintiff is entitled.  *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  Plaintiff must provide evidence to support its requested relief and the relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Here,

---

[3] Plaintiff's Motion does not request default judgment on Count V of the Complaint.

Plaintiff seeks: (1) a permanent injunction; (2) equitable remedies; and (3) a civil monetary penalty.

    A.    Permanent Injunction

Plaintiff is seeking a permanent injunction enjoining Defendant from committing future violations of the Act and the Commission's regulations. "Under Section 6c of the Commodity Exchange Act, 7 U.S.C. § 13a-1 (2006), injunctive relief is appropriate where there is a reasonable likelihood of future violations." *U.S. Commodity Futures Trading Comm'n, Capitol Equity FX LLC*, Civ. No. 17-743 JGB (SKx), 2017 WL 9565340 *6 (C.D. Cal. July 31, 2017).

While past misconduct does not necessarily lead to the conclusion that there is a likelihood of future misconduct, it is "highly suggestive of the likelihood of future violations." *CFTC v. CoPetro Marketing Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980) (quoting *CFTC v. Hunt*, 591 F.2d 1211,1220 (7th Cir. 1979)). "In predicting the likelihood of future violations, a court must assess the totality of the circumstance surrounding the defendant . . . and it considers facts such as the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognitions of the wrongful nature of his conduct . . ." *S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

In this case, Defendant and Partner defrauded approximately 25,000 victims and obtained over $3,799,633.00 in fees paid to them for the trading accounts that

16

were opened.  ECF 27-1 at 12-13.  Defendant's conduct was not an isolated incident, but a continuing effort to use misleading solicitations to promote automated trading software from 2014 until December 2016.  Additionally, there is no evidence before the Court that Defendant showed any remorse for his actions or the victim's losses.  In fact, at Defendant's deposition taken during the Commission's investigation, Defendant invoked the Fifth Amendment against self-incrimination for all of Plaintiff's questions, thus taking no responsibility for his actions.  ECF No. 27-4.  Accordingly, the Court finds that there is a reasonable likelihood that Defendant would engage in the same acts and practices alleged in the Complaint.  Therefore, the Court finds and recommends that Defendant be permanently enjoined form committing any future violations of the Act or of the Commission's regulations.

B.   Equitable Remedies

7 U.S.C. § 13a-1(d)(3) provides that "the Commission may seek, and the court may impose . . . equitable remedies including - - (A) restitution to persons who have sustained losses proximately cause by such violation (in the amount of such losses); and (B) disgorgement of gains received in connection with such violation."

1.      Restitution

Defendant and Partner's fraud was the proximate cause of the losses sustained by the victims.  The victims of the fraudulent affiliate marketing scheme lost $6,258,250.00.  *Id*.  Partner, as part of his settlement with Plaintiff, was ordered to disgorge $1,899,837.00.  Accordingly, Defendant shall be ordered to pay $6,258,250.00 with an off-set for any amount paid by Partner pursuant to the settlement.

2.      Disgorgement

Due to Defendant and Partner's fraudulent conduct, they made $3,799,673.00 in gross profits.  *Id*.  As stated above, Partner was ordered to disgorge the amount of $1,899,837.00 pursuant to the settlement agreement with Plaintiff.  Therefore, Defendant should be ordered to disgorge in the amount of $1,899,836.00.

C.    Civil Monetary Penalty

Plaintiff also seeks the imposition of a civil monetary penalty against Defendant.  Section 6c(d)(1)(A) of the Act, 7 U.S.C. § 13a-1(d)(1)(A), permits the district court to impose on a person who is found to have violated the Act a civil monetary penalty of not more than the greater of $100,000 or triple the monetary gain to the person for each violation.

Specifically, Plaintiff requests a civil monetary penalty in the amount of $5,699,508.00. This amount represents three times Defendant's gain of $1,899,836.00. Plaintiff requests the maximum civil monetary penalty because of the serious nature of Defendant's misconduct, as well as Defendant's refusal to participate in these proceedings. In light of the egregiousness of Defendant's systemic and pervasive scheme to mislead and profit off of participants from at least 2014 to December 2016, the intentional nature of the conduct, and Defendant's failure to defend this action or accept any responsibility for his misconduct, the Court finds and recommends that a civil monetary penalty in the amount of $5,699,508.00 is warranted in this case.

## CONCLUSION

Based on the foregoing, the Court FINDS AND RECOMMENDS that the district court GRANT Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief as follows:

**(1)     Default Judgment**

Enter default judgment in favor of Plaintiff and against Defendant on Counts I, II, III and IV of the Complaint. The Court takes no action on Count V of the Complaint, as it was not included in the relief requested in the instant Motion.

However, Plaintiff is directed to either file a motion for default judgment on Count V or a dismissal of Count V by August 12, 2020.

**(2)     Permanent Injunction**

Permanently restrain, enjoin and prohibit Defendant from directly or in directly:

a.     Offering to enter into, entering into, confirming the execution of, maintaining positions in, or otherwise conducting activities relating to binary options;

b.     Acting as an affiliate marketer in any capacity that involves binary options or any "commodity interest" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019);

c.     Offering autotrading systems or services that purport to trade binary options or any "commodity interest" (as that term is defined in 17 C.F.R. § 1.3);

d.     (1) Cheating or defrauding, or attempting to cheat or defraud any other person; (2) making or causing to be made false reports or statement to any person; or (3) deceiving or attempting to deceive any person in, or in connection with, an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction in interstate commerce that is a commodity option transaction, by using fraudulent solicitations in emails, websites and videos that promise free access to Trading Systems to induce prospective customers to

20

open and fund binary options trading accounts with a recommended broker so that Defendant can earn commissions, in violation of Section 4c(b) of the Act, 7 U.S.C. §6c(b) (2018), and Regulation 32.4, 17 C.F.R. § 32.4 (2019);

e.     While acting as a CTA, using the instrumentalities of interstate commerce to: (1) employ any device, scheme, or artifice to defraud clients or prospective clients; or (2) engage in any transaction, practice, or course of business which operates as a fraud or deceit upon clients or prospective clients, by fraudulently soliciting members of the public and creating and/or disseminating fraudulent websites and emails to induce members of the public to go through a website funnel and open and fund binary options trading accounts with a recommended broker to access the advertised Trading System, in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1)(2018);

f.     While acting as a CTA, advertising in a manner which: (1) employs any device, scheme or artifice to defraud any client or prospective client; (2) involves any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client; or (3) refers to any testimonial in an advertisement or sales literature that fails to prominently disclose that the testimonial: (i) may not represent the experience of other users of the marketed Trading System; (ii) is no guarantee of future performance; or (iii) uses paid actors

or misappropriated images from the internet, in violation of Regulation 4.41(a)(1)-(3), 17 C.F.R. § 4.41(a)(1)-(3) (2019);

g.     (1) Using or employing, or attempting to use or employ, manipulative devices, schemes, and artifices to defraud; (2) making, or attempting to make, untrue or misleading statements of material fact; (3) omitting to state material facts necessary in order to make statements made not untrue or misleading; or (4) engaging, or attempting to engage, in acts, practices, and courses of business, which operate or would operate as a fraud or deceit upon any person in connection with swap transactions, by using fraudulent solicitations in emails, websites and fictitious videos that promise free access to Trading Systems to induce prospective customers to go through the website funnel and open and fund a binary options trading account with a recommended broker to earn commissions, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a), 17 C.F.R. § 180.1(a)(2019);

h.     Trading on or subject to the rules of any "registered entity" (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

i.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)) for Defendant's personal account or for any account in which he has a direct or indirect interest;

j.     Having any commodity interests traded on his behalf;

k.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

l.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests:

m.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.13(a)(9) (2019); and/or

n.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2018)) registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9);

**(3)   Restitution**

Order Defendant to pay restitution in the amount of $6,258,250.00 ("Restitution Obligation") with an off-set for any disgorgement paid by Partner pursuant to Partner's settlement agreement with Plaintiff.  Post-Judgment interest shall accrue beginning on the date of entry of any Order adopting these Findings and Recommendation and shall be determined by using the Treasury Bill rate

prevailing on the date of entry of the Order adopting these Findings and Recommendation pursuant to 28 U.S.C. § 1961 (2018).

a.      To effect payment of the Restitution Obligation and the distribution of any restitution payments to customers, National Futures Association ("NFA") shall be appointed Monitor ("Monitor").  The Monitor shall collect restitution payments from Defendant and make distributions as set forth below.  Because the Monitor is acting as an officer of the Court in performing these services, the NFA shall not be liable for any action in inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

b.      Defendant shall make Restitution Obligation payments, and any post-judgment interest payments to the Monitor in the name "Szatmari Restitution Fund" and shall send payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies Defendant and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

c.      The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to the pool participants identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth below.

d.      Defendant shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify pool participants to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendant shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

e.      The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to customers during the previous year.  The Monitor shall transmit this report under a cover letter that

25

identifies the name and docket number of this proceeding to the

Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155, 21st Street, NW, Washington D.C. 20581.

     f.    The amounts payable to each customer shall not limit the ability of

any customer from proving that a greater amount is owed from Defendant or any

other person or entity, and nothing herein shall be construed in any way to limit or

abridge the rights of any customer that exist under state or common law.

     g.    Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each

customer who suffered a loss is explicitly made an intended third-party beneficiary

of an Order Adopting this Findings and Recommendation and may seek

enforcement to obtain satisfaction of any portion of the restitution that has not been

paid by Defendant to ensure continued compliance and to hold Defendant in

contempt for any violations of any provision.

     h.    To the extent that any funds accrue to the U.S. Treasury for

satisfaction of Defendant's Restitution Obligation, such funds shall be transferred

to the Monitor for disbursement in accordance with the procedures set forth above;

**(4)**   **Disgorgement**

     Order Defendant to disgorge in the amount of $1,899,836.00

("Disgorgement Obligation").  Post-judgment interest shall accrue on this

Disgorgement Obligation beginning on the date of entry of any Order Adopting

this Findings and Recommendation and shall be determined by using the Treasury

Bill rate prevailing on the date of the entry of the Order Adopting this Findings and

Recommendation pursuant to 28 U.S.C. § 1961 (2018).

     a.    Defendant shall pay his Disgorgement Obligation by electronic funds

transfer, U.S. postal money order, certified check, bank cashier's check, or bank

money order.  If payment is to be made other than by electronic funds transfer,

then the payment shall be made payable to the Commodity Futures Trading

Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electric funds transfer is chosen, Defendant shall contact

Marie Thorne or her successor at the address above to receive payment instructions

and shall fully comply with those instructions.  Defendant shall accompany

payment of the Disgorgement Obligation with a cover letter that identifies

Defendant and the name and docket number of this proceeding.  Defendant shall

simultaneously transmit copies of the cover letter and the form of payment to the

Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581; and

**(5)**   **Civil Monetary Penalty**

Order Defendant to pay civil monetary penalty in the amount of $5,699,508.00 ("CMP Obligation").  If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of any Order Adopting this Findings and Recommendation and shall be determined by using the Treasury Bill rate prevailing on the date of the entry of any Order Adopting this Findings and Recommendation pursuant to 28 U.S.C. § 1961 (2018).

a.      Defendant shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electric funds transfer is chosen, Defendant shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant shall accompany

payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

b.      Acceptance by the Commission or the Monitor of any partial payment of Defendant's Restitution Obligation, Disgorgement Obligation, or CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Findings and Recommendation, or a waiver of the Commissions' right to compel payment of any remaining balance.

**(6)**      Miscellaneous Provisions

a.      Defendant shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, in this action, and in any current or future action related thereto.

b.      Until such time as Defendant satisfies in full the Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Findings and Recommendation, Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change;

c.      All notices required to be given by any provision in this Findings and

Recommendation shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

     Robert T. Howell
     Deputy Director, Division of Enforcement
     Commodity Futures Trading Commission
     525 W. Monroe St.
     Chicago, IL 60661

Notice to NFA:

     Daniel Driscoll, Executive Vice President, COO
     National Futures Association
     300 S. Riverside Plaza, Suite 1800
     Chicago, IL 60606-3447

All such notices to the Commission or the NFA shall reference the name and

docket number of this action.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, July 28, 2020.

Kenneth J. Mansfield
United States Magistrate Judge

*United States Commodity Futures Trading Commission v. Peter Szatmari*, CV 19-00544 DKW-KJM; Findings and Recommendation to Grant Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief.